MARK B. MIZRAHI (BAR NO. 179384)
mark.mizrahi@saul.com
MINJAE KIM (BAR NO. 344110)
minjae.kim@saul.com
SAUL EWING LLP
1888 Century Park East, Suite 1500
Los Angeles, California 90067
Telephone: (310) 255-6100
Facsimile: (310) 255-6200

TAMARA F. CARMICHAEL (Admitted *Pro Hac Vice*)
tamara.carmichael@saul.com
SAUL EWING LLP
1270 Avenue of the Americas, Suite 2800
New York, New York 10020
Telephone: (212) 980-7200
Facsimile: (212) 980-7209

Attorneys for Plaintiffs HARPO, INC. and
OW LICENSING COMPANY, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HARPO, INC. and OW LICENSING COMPANY, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>EMBLAZE ONE INC., LIMITLESS X INC., LIMITLESS X HOLDINGS INC., THE AFFILIATI NETWORK, LLC, SMILZ INC, JASPREET MATHUR, KENNETH HALLER and JOHN DOES 1-30,<br><br>Defendants. | Case No. 2:23-cv-04459-JGB-AS<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT THE AFFILIATI NETWORK LLC'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: November 10, 2025<br>Time: 9:00 A.M.<br>Crtrm.: 1, Second Floor<br><br>Judge: Hon. Jesus G. Bernal<br><br>Trial Date: April 21, 2026 |

I.  **INTRODUCTION**

Plaintiffs Harpo, Inc. and OW Licensing Company, LLC (collectively, "Plaintiffs") hereby oppose defendant The Affiliati Network, LLC's ("Affiliati") motion to dismiss the First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 12(b) (the "Motion"). To avoid answering the specific allegations against it recited in the FAC, throughout the Motion, Affiliati relies on the following generalized, non-specific assertions: (1) grouping of defendants and incorporation of paragraphs make it "impossible for Affiliati to determine . . . which of the paragraphs and conclusory allegations are directed at it," and (2) "fail[ure] to meet heightened pleading requirements" makes it "impossible for Affiliati to respond to or defend." Motion at 6, 8. But the Motion must fail as it suffers from the following fatal defects:

*First*, nothing about grouping the defendants or incorporation prevents Affiliati from answering the FAC. The FAC details the role of each defendant, including Affiliati. While the full extent of each defendant's involvement may not be entirely clear at this point, Plaintiffs have pleaded sufficiently for Affiliati to respond.

*Second*, to the extent that one or more of the FAC's claims must be pleaded with particularity, Plaintiffs have done so. Most importantly, the Ninth Circuit has not definitively addressed whether Rule 9(b) applies to Lanham Act claims. But even if the 9(b) standard applies, the FAC exceeds this threshold with detailed allegations against all defendants, including Affiliati.

In light of the foregoing, and based on the arguments set forth in greater detail below, Affiliati's motion to dismiss should be denied in its entirety.

II.  **FACTUAL BACKGROUND**

A.  **Affiliati is a "Partner" in Each Transaction It Facilitates.**

As alleged in the FAC, Affiliati is an affiliate marketing company that acts as a bridge between advertisers and affiliate marketers/publishers. *See* FAC ¶¶ 47, 70,

73, 74; *see also* Home Page, Affiliati, https://affiliatinetwork.com (accessed Oct. 16, 2025)[1]. *By its own words*, Affiliati plays an integral part in generating transactions by offering a "curated marketplace of exclusive, top-converting campaigns," "[m]ultiple [w]ays to [m]onetize," and "[t]ools to [m]aximize . . . [e]arnings," among others. Why Partner with Us, https://affiliatinetwork.com/affiliates/why-partner-with-us/ (accessed Oct. 16, 2025)[2]; *see* FAC ¶¶ 47, 49, 52. In other words, Affiliati is responsible for creating the "curated marketplace," without which the infringing activities at issue could not have occurred.

Affiliati provides "[m]ulti-[c]hannel [s]trategies to [m]aximize . . . [e]arnings," including "[f]eatur[i]ng top offers in curated[] . . . *articles that drive intent-based clicks*." Why Partner with Us, *supra* (emphasis added)[3]; *see* FAC ¶¶ 52, 54, 55. Affiliati is a self-described "trusted *partner* . . . for advertisers and affiliates alike." Why Advertisers & Affiliates Choose Affiliati, https://affiliatinetwork.com/why-us/ (accessed Oct. 16, 2025) (emphasis added)[4]; *see* FAC ¶¶ 46, 47, 70, 73, 74.

---

[1] Plaintiffs request that this Court take judicial notice of pages from Affiliati's own website cited in this opposition. Fact subject to judicial notice include those that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Civ. P. 201(b)(2). A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Civ. P. 201(c)(2). "In deciding whether to dismiss a complaint under Rule 12(b)(6), the court may consider matters of public record." *Sebastian v. United States*, 185 F.3d 1368, 1374 (Fed. Cir. 1999) (citations omitted); *see also* 5B Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1357 (4d ed. Sept. 2025 Update) ("courts resolving 12(b)(6) motions may consider . . . items subject to judicial notice[ and] matters of public record" among others "without converting the motion into one for summary judgment").

[2] *See supra* n.1.

[3] *See supra* n.1.

[4] *See supra* n.1.

### B. Affiliati Facilitated the Infringements Here.

As detailed in the FAC, Affiliati actively participated in the infringing activities here by, among others, facilitating the publishers it engages to market the infringing products through fake news articles, websites, and posts. *See* FAC ¶¶ 68–78. And importantly, it benefited handsomely from such activities. *Id.* ¶ 72.

Despite Affiliati's insistence that the publishers were "independent third-party," Motion at 2, Affiliati's role is instrumental and indispensable: Affiliati hired the publishers who promoted infringing products through misleading advertisements, *id.* ¶ 70; engaged the suppliers who provided the said products, *id.* ¶ 73; and despite the likelihood of fraud, failed to implement proper policies for marketing activities it curated, *id.* ¶ 76. Defendant Emblaze One Inc's infringing sales could not have occurred without the participation of Affiliati or its publishers.

One such example is a *HealthStatus* article titled "Oprah Winfrey Keto Gummies Review 2023: Does It Work?" and written by a "Dr. Nick Willson PhD." *See* FAC ¶ 54. Disguised as an authoritative article written by a doctor, it relies on and infringes Plaintiffs' marks/publicity rights to bolster the infringing products' legitimacy for unsuspecting online customers. *See id.* ¶¶ 54–59.

### C. Procedural History

In June of 2023, Plaintiffs filed a complaint against Emblaze One Inc., Limitless X Inc., Jaspreet Mather, Kenneth Haller, and John Does 1-30 in June 2023, and the FAC in July of this year. Docket Nos. 1, 109. After some initial discovery, Plaintiffs added Affiliati as one of the newly named defendants in the FAC. Docket No. 109. On September 22, Affiliati filed a generic motion to dismiss without addressing the sufficiency of any specific claim. *See* Docket No. 134.

## III. AFFILIATI'S MOTION TO DISMISS SHOULD BE DENIED.

### A. Legal Standard for Dismissal

On a motion to dismiss, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the

threshold in attempting to establish his claims." *Ellis v. City of Pittsburg*, 2001 WL 1256441, at *1 (C.D. Cal. 2001) (quoting *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978)).  In analyzing the motion, the allegations of the complaint should be construed favorably to the pleader.  *Id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 486 U.S. 183 (1984)).  Thus, the relevant question is "whether or not it appears to a certainty under existing law that no relief can be granted under *any* set of facts that might be proved in support of plaintiffs' claims." *De La Cruz*, 582 F.2d at 48 (emphasis added).

### B. Plaintiffs Properly Pleaded Their Claims

Affiliati claims that the FAC should be dismissed for two reasons: (i) FAC is "an improper 'shotgun pleading' . . . improperly grouping all defendants together and incorporat[ing] all preceding paragraphs into each cause of action," and (ii) "FAC fails to comply with Rule 9(b) because Plaintiffs' claims grounded in fraud, false advertising and deception, are not ple[aded] with particularity."  Motion at 2–3.  But these arguments are merely red herrings intended to distract from allegations directly addressing Affiliati's involvement in the pleaded marketing scam.

*First*, grouping defendants together in a civil conspiracy is permissible when the defendants have entered into agreements for the same purpose or objective. *Hoang v. Tran*, 274 Cal. Rptr. 3d 567, 589 (Ct. App. 2021).  "The elements of a civil conspiracy generally are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." *Id.*  Those elements have been more than met here.

(1) Affiliati, suppliers, and publishers, explicitly or implicitly, formed a "common plan" for a marketing scheme that easily misappropriated others' intellectual property rights and rights of publicity without proper procedures or consent.  *See, e.g.*, FAC ¶¶ 52, 70, 72, 73, 74, 75.

(2) Each defendant played its own part in publishing false advertisements and selling the infringing products, which not only exploited Plaintiffs' rights, falsely claimed health benefits, but also contained lead, arsenic, and cadmium. *Id.* ¶¶ 58, 60, 66.

(3) Plaintiffs suffered irreparable damages from unwanted associations with dangerous products and misled consumers who purchased those products by relying on Plaintiffs' brand falsely associated with the products. *Id.* ¶¶ 28, 29, 42, 84.

Every player in the common plan benefited from this "common plan." *See, e.g., id.* ¶¶ 77, 78. And as it presents itself online, *see supra*, Affiliati played an essential role in creating and facilitating the common plan that profited from misappropriation of Plaintiffs' rights.

Moreover, incorporating prior allegations by reference is a "recognized and accepted method of pleading." *In re Dargie's Estate*, 91 P.2d 126, 131 (Cal. Ct. App. 1939) (citations omitted); *see also Pine Terrace Apartments, L.P. v. Windscape, LLC*, 87 Cal. Rptr. 3d 630, 641 (Ct. App. 2009) (same). While incorporation may not always be the most elegant solution, it often makes the pleading more concise and efficient in accordance with the Federal Rule of Civil Procedure 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading . . . ."). In such a complex marketing scheme that Affiliati engineered to evade legal liability on its part, incorporation allowed unnecessary repetition of each defendant's actions and omissions that would have made the FAC more cumbersome and lengthy.

The mere fact of incorporation does not "mak[e] it impossible to formulate a response." Motion at 6. If anything, in its answer, Affiliati can incorporate its prior responses to the same paragraphs that are incorporated by the FAC. Nothing prevents Affiliati from responding on behalf of itself only.

**Second**, Affiliati's argument on particularity fails. Fundamentally, it is questionable whether Rule 9(b) applies to Lanham Act claims. The Ninth Circuit

has not definitively addressed whether Rule 9(b) applies to Lanham Act claims. *Bobbleheads.com, LLC v. Wright Brothers, Inc.*, 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017) ("[T]he Ninth Circuit has yet to decide whether Rule 9(b) applies to Lanham Act claims."); *EcoDisc Technology AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) ("[T]he Ninth Circuit has not concluded that Rule 9(b) applies to Lanham Act claims."). But even if Rule 9(b) applies, the FAC more than meets this standard.

Rule 9(b) requires particularized allegations of the circumstances constituting fraud, *i.e.*, who, what, when, where and how. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). Here, the FAC identified who (Affiliati, suppliers, and publishers), what (false advertisements that misappropriated Plaintiffs' brand), when (at least one example from 2023), and where (fake news sites online). *See, e.g.*, FAC ¶¶ 54–63, 70, 73. The FAC further alleged that Affiliati facilitated (at the very least through willful blindness) the publishers to post these false advertisements and engaged the suppliers that supplied not only ineffective, but dangerous dietary supplements ("how"). *See, e.g., id.* ¶¶ 64–66, 72, 76. "This is more than fraud by hindsight." *Cooper*, 137 F.3d at 627. The FAC supplies the particularized facts the Ninth Circuit law requires and are sufficient to survive a Rule 12(b)(6) dismissal.

The "generalizations surrounding industry practices" in the FAC are merely background for the Court to understand how affiliate marketing schemes may easily exploit legal loopholes and subsequently evade consequences. *See, e.g.*, FAC ¶¶ 51 (low barrier of entry), 52 (fake news misappropriating others' intellectual property to sell unauthorized goods), 53 (registrants of sales pages untraceable); *see also FTC v. LeadClick Media, LLC*, 838 F.3d 158, 164 (2d Cir. 2016) ("[F]ake news sites . . . [are] commonplace in the [affiliate marketing] industry.") (simplified).

With the opportunity to take formal discovery from Affiliati, Plaintiffs expects to further tease out the details concerning each of the defendants' precise role in the alleged scheme. But what is clear from the current evidence uncovered

thus far: all of the players participated in a common plan and purpose to benefit from (and did benefit from) misappropriating from Plaintiffs' rights, as pleaded in detail.

### C. If the Motion is Granted, Plaintiffs Should be Granted Leave to Amend.

It is well-established that, if the court dismisses a complaint for failure to state a claim, leave to amend should be granted unless the court determines that "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1383, 1401 (9th Cir. 1986). Federal Rule of Civil Procedure 15(a)(2) similarly provides that leave to amend should be "freely" granted when justice requires.

In this case, there are no deficiencies in the FAC. However, if the Court determines that Plaintiffs must plead additional facts, Plaintiffs request leave to amend to cure any defects in its pleading.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Affiliati's motion to dismiss be denied in its entirety. In the event that the Court is inclined to grant Affiliati's motion, in whole or in part, Plaintiffs respectfully request leave to amend the FAC to cure any defects in its pleading.

DATED: October 20, 2025            SAUL EWING LLP

By: /s/ *Mark B. Mizrahi*
MARK B. MIZRAHI
MINJAE KIM
Attorneys for Plaintiffs HARPO, INC. and
OW LICENSING COMPANY, LLC