UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 23-4459 JGB (ASx)** | Date | January 29, 2026 |
|---|---|---|---|
| Title | *Harpo, Inc., et al. v. Emblaze One Inc., et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Afiliati's Motion to Dismiss (Dkt. No. 134); and (2) VACATING the February 2, 2026 Hearing (IN CHAMBERS)

Before the Court is Defendant Affiliati Network LLC's motion to dismiss. ("Motion," Dkt. No 134.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the matter, the Court **GRANTS** the Motion and **VACATES** the hearing set for February 2, 2026.

## I. BACKGROUND

On June 7, 2023, Plaintiffs Harpo, Inc. and OW Licensing Company, LLC initiated this action. (Dkt. No. 1.) On July 2, 2025, Plaintiffs filed the operative first amended complaint against Defendants Limitless X Inc., Limitless X Holdings Inc., Smilz Inc., Affiliati Network LLC, Jaspreet Mathur, Kenneth Haller (collectively, "Defendants"), and Does 1 through 30. ("FAC." Dkt. No. 109.) The FAC asserts fourteen causes of action (1) trademark infringement under 15 U.S.C. § 1114; (2) false designation of origin, false description, and sponsorship under 15 U.S.C. § 1125(a)(1)(A); (3) false advertising under 15 U.S.C. § 1125(a)(1)(B); (4) trademark dilution under 15 U.S.C. § 1125(c); (5) common law trademark infringement; (6) common law unfair competition; (7) false advertising under California Business & Professions Code § 17500 et seq.; (8) common law trademark dilution; (9) misappropriation of name and likeness under California Civil Code § 3344; (10) common law misappropriation of name and likeness; (11) common law rights of publicity; (12) California civil conspiracy; (13) common law unjust enrichment; and (14) unfair competition under California Business & Professions Code § 17200 et seq. (See id.)

On September 22, 2025, Affiliati filed the instant Motion. (Mot.) On October 20, 2025, Plaintiffs opposed the Motion. ("Opp'n," Dkt. No. 137.) Affiliati filed a reply in support of the Motion on October 27, 2025. ("Reply," Dkt. No. 138.)

**A. Factual Allegations**

Plaintiffs are companies affiliated with the personality Oprah Winfrey and brought this suit on belief that Defendants "engaged in the unauthorized use of the name, likeness, and/or persona of Oprah Winfrey (the "OW Publicity Rights") and related trademarks within this district, throughout the United States, and/or beyond, through various channels including affiliate marketing schemes and e-commerce websites[.]" (FAC at 3.)

Affiliati is a Delaware limited liability company with its principal place of business in Santa Barbara, California. (Id. ¶ 15.) Affiliati is an "affiliate marketing network," a "third-party service[] which acts as [an] intermediar[y] between the sellers and the Publisher." (Id. ¶ 47.) Online sellers of goods, "Suppliers," seek out Publishers to "market the seller's product in an appealing way to potential consumers." (Id. ¶¶ 46–47.) Publishers "can self-host or join an affiliate marketing network" such as Affiliati to market the goods. (Id. ¶47.)

Plaintiffs allege "Affiliati contracted with Publishers (including but not limited to the Doe Defendants) who in turn marketed the Unauthorized Products through channels such as social media, blogs, sponsored 'news' stories, and websites in exchange for remuneration." (Id. ¶ 70.) "Affiliati and/or the Supplier Defendants in turn added the Unauthorized Products to its affiliate network offerings for Publishers (e.g., the Doe Defendants) within its network to promote the Unauthorized Products in exchange for payment from the Supplier Defendants to Affiliati and its Publishers." (Id. ¶ 74.) In contracting with Publishers, "Affiliati knows, should know, and/or is willfully blind to such blatant infringing activities[.]" (Id. ¶ 72.)

"Affiliati knew that it did not implement proper policies and procedures to prevent fraud, particularly with respect to the affiliates at issue in this case." (Id. ¶ 76.) "Each and every Supplier Defendant as well as Affiliati, directly and/or indirectly, had control over and the right to supervise the Publishers' infringements, e.g., including the contractual right to immediately terminate the infringements, and induced the Publishers to engage in the wrongful conduct as alleged herein." (Id. ¶ 77.)

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," to give the defendant "fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ileto v. Glock Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as

any reasonable inferences to be drawn from them—as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Courts are not required, however, "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.2d 1049, 1055 (9th Cir. 2008) (internal citation and quotation omitted). Courts also need not accept as true allegations that contradict facts which may be judicially noticed. See Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." at 570; Ashcroft v. Iqbal, 556 U.S. 662 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### III.  DISCUSSION

Affiliati moves to dismiss Plaintiffs' FAC for two reasons (1) "the FAC is an improper 'shotgun pleading' that fails to conform with Rule 8(a) and (d) by improperly grouping all defendants together and incorporates all preceding paragraphs into each cause of action;" and (2) "the FAC fails to comply with Rule 9(b) because Plaintiffs' claims grounded in fraud, false advertising and deception, are not pled with particularity." (Mot. at 2.) Plaintiffs assert (1) that "[w]hile the full extent of each defendant's involvement may not be entirely clear at this point, Plaintiffs have pleaded sufficiently" regarding Affiliati's conduct; and (2) "to the extent that one or more of the FAC's claims must be pleaded with particularity, Plaintiffs have done so." (Opp'n at 2.)

Even without applying the heightened Rule 9(b) standard, the Court finds Plaintiffs fail to state any claim against Affiliati. The theory of Affiliati's liability is that it engaged in fraudulent and misleading conduct by "actively participated in the infringing activities . . . [and] facilitating the publishers it engages to market the infringing products through fake news articles, websites,

and posts." (Opp'n at 4 (citing FAC ¶¶ 68–78.))  However, it is unclear with whom Affiliati contracted, which products were marketed, and the modes used to market the unnamed goods.  Plaintiffs also do not even allege timeframes for Affiliati's purported conduct.  Although Plaintiffs specifically mention "Oprah Winfrey Keto Gummies," "Oprah Keto Pills," and "Oprah Winfrey CBD Gummies" as some of the unauthorized products promoted and sold, there is nothing in the FAC connecting those products or the sales of those products to Affiliati.  (See FAC ¶¶ 41, 56–59.)  Further, with respect to the allegations in which Affiliati is explicitly mentioned, the Court cannot accept these allegations as true because they are nothing more than conclusions "cast in the form of a factual allegation."  U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  This point is underscored by Plaintiffs' Opposition, wherein the discussion of Affiliati's conduct is only supported by allegations pertaining to Defendant Emblaze One Inc.  (Opp'n at 4.)

Likewise, the Court agrees with Affiliati that Plaintiffs' failure to distinguish between Defendants obscures each party's role and purported culpability.  "As a general rule, when a pleading fails to allege what role each Defendant played in the alleged harm, this makes it exceedingly difficult, if not impossible, for individual Defendants to respond to Plaintiffs' allegations."  Adobe Sys., Inc. v. Blue Source Group, Inc., 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (citation modified).  While lumping Defendants together does not automatically make a claim deficient, Plaintiffs still "must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole."  Id.  This is especially true in the instant action concerning an alleged "complex marketing scheme," where there is no apparent chain of events and or factual allegations concerning the relationships among Defendants.  Indeed, even Plaintiffs' Opposition casts confusion on Affiliati's role in this scheme: the FAC alleges that Affiliati is a marketing platform used by Publishers to market unauthorized products, while the Opposition characterizes Affiliati as soliciting the promotion of infringing products and the dissemination of false advertising.  (Compare FAC ¶¶ 46–47 with Opp'n at 4.)  Because Affiliati's role and conduct in this matter are ill-defined, the task of assessing whether Plaintiffs state a claim against Affiliati for all fourteen causes of action is futile.  Therefore, the Court **DISMISSES** all claims against Affiliati.

Plaintiffs request that the Court grant leave to amend.  (Opp'n at 8.)  However, granting leave to amend requires the Court to modify its scheduling order.  Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order shall be modified "only for good cause."  "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment."  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).  The focus of the court's inquiry is upon the moving party's explanation for failure to timely move for leave to amend.  Id.  "The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson, 975 F.2d at 609).

      The last day to stipulate or file a motion to amend pleadings or add new parties was May 30, 2025.  (Dkt. No. 97.)  Additionally, discovery in this matter closed on December 22, 2025, and the dispositive motion hearing cut-off is fast-approaching on February 23, 2026.  (Dkt. No. 133.)  Further, this matter has been pending since 2023, so it is puzzling that Defendant Smilz Inc. has not been served; Doe Defendants remain outstanding; and Defendant Limitless X Holdings Inc. has failed to file an answer, yet Plaintiffs have not moved for entry of default.  Thus, the Court finds Plaintiffs' diligence in prosecuting this matter to be lacking and no good cause warranting amendment.  Accordingly, Plaintiffs' request for leave to amend is **DENIED**.

## IV.  CONCLUSION

      For the foregoing reasons, the Court **GRANTS** Affiliati's Motion.

      **IT IS SO ORDERED.**